# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| DANIELLE WILHITE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-01267 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 7, 9 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Danielle Wilhite, on behalf of her son J.Y., seeks from Defendant the District of Columbia attorneys' fees and costs arising from Ms. Wilhite's administrative proceeding against the District under the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. §§ 1400–1482. *See* Compl. 1, ECF No. 1; Pl.'s Mot. Summ. J. 1, ECF No. 7. Although the parties agree that Ms. Wilhite was the prevailing party in the administrative proceeding, the District disputes the reasonableness of her requested fees and argues that the Court should employ a reduced hourly rate. *See* Mem. P. & A. Supp. Pl.'s Mot. Summ. J. 2–7, ECF No. 7-1 [hereinafter Pl.'s Mem.]; Def.'s Mem. Opp'n Pl's Mot. Summ. J. & Def.'s Cross-Mot. Summ. J. 2–12, ECF No. 9 [hereinafter Def.'s Cross-Mot.]. The Court concludes that only some of Ms. Wilhite's requested fees are reasonable and adopts the District's suggested hourly rate. Accordingly, the Court will deny in part and grant in part Ms. Wilhite's motion for summary judgment on her fees request, and the Court will grant the District's cross-motion for summary judgment on Ms. Wilhite's fees request.

## II. BACKGROUND

Ms. Wilhite is the mother of J.Y., who in June 2015 was an eighteen-year-old tenth-grade student at Anacostia Senior High School and was eligible for special education and related services. *See* Hearing Officer Determination, Pl.'s Mot. Summ. J. Ex. 1, at 1, 3, App. A, ECF No. 7-4 [hereinafter HOD]. In March 2015, Ms. Wilhite filed an administrative due process complaint against the District of Columbia Public Schools (DCPS) and alleged that DCPS denied J.Y. the free and appropriate public education to which he was entitled under the IDEA. *See* HOD 1. In support of her contention, Ms. Wilhite presented three claims regarding DCPS's failure to meet J.Y.'s specified needs during the 2013–2014 and 2014–2015 academic years: she alleged that DCPS (1) failed to develop appropriate individualized education plans (IEPs) for J.Y., (2) failed to implement J.Y.'s existing IEPs effectively, and (3) failed to provide appropriate school placements for J.Y. *See* HOD 2. Ms. Wilhite sought an order (1) that would require DCPS to convene a new meeting to revise J.Y.'s IEP appropriately, (2) that would require DCPS to provide funding for placement at a nonpublic school, and (3) that would award compensatory education. *See* HOD 3.

Ms. Wilhite and DCPS participated in a two-day administrative due process hearing in May 2015, and the hearing officer issued a determination in June 2015. *See* HOD 1. The hearing officer found in favor of Ms. Wilhite on all three of her claims and granted Ms. Wilhite all of the relief that she had requested. *See* HOD 8–13. In August 2015, Ms. Wilhite filed a complaint in this Court against the District for her attorneys' fees and costs incurred in connection with the administrative due process proceeding. *See* Compl.

The parties have filed cross-motions for summary judgment on the amount of fees and costs to award Ms. Wilhite. *See* Pl.'s Mot. Summ. J.; Def.'s Cross-Mot. Ms. Wilhite requests

$61,120 in attorneys' fees and costs, which she calculates using the full rate applicable to her attorney under the 2014–2015 *Laffey* Matrix.[1] *See* Pl.'s Mem. 4–6, 7–8; Pl.'s Mot. Summ. J. Ex. 2, ECF No. 7-5 [hereinafter *Laffey* Matrix]; Pl.'s Mot. Summ. J. Ex. 3, ECF No. 7-6 (reproducing Ms. Wilhite's counsel's fee invoice).[2] The District urges the Court to instead use an hourly rate equal to three-quarters of the *Laffey* Matrix rate. *See* Def.'s Cross-Mot. 1, 6–12. The

---

[1] The *Laffey* Matrix is a fee schedule used by some courts to determine reasonable hourly rates for legal work. *See generally Laffey v. Nw. Airlines, Inc.* 572 F. Supp. 354, 371–75 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*; *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (establishing the first *Laffey* fee matrix, in the context of a longstanding employment discrimination class action). The United States Attorney's Office for the District of Columbia prepares the matrix for use in cases in which a "fee-shifting" statute allows prevailing plaintiffs to recover their attorneys' fees. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015); *see also, e.g.*, *Laffey Matrix – 2014–2015*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/sites/default/files/usao-dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited July 25, 2016). Updated *Laffey* Matrix rates are available through the U.S. Attorney's Office's website. *See Civil Division*, U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/civil-division (last updated Dec. 1, 2015) (publishing links to *Laffey* matrices at the bottom of the webpage).

Until the 2015–2016 year, the *Laffey* Matrix was adjusted for inflation by reference to the overall cost of living in the Washington, D.C., metropolitan area. *See Eley*, 793 F.3d at 101; *Laffey Matrix – 2014–2015*, *supra*, at 1 n.2. A competing matrix, sometimes called the "LSI *Laffey* Matrix," "adjusts for the increases in costs for legal services only," but by reference to "the *national* rate of change in the cost of legal services." *Eley*, 793 F.3d at 101–02.

[2] The Court notes that Ms. Wilhite requests full *Laffey* Matrix rates under the 2014–2015 *Laffey* Matrix for all her requested attorneys' fees. *See Laffey* Matrix (setting a $460 hourly rate for attorneys with eleven to nineteen years of experience); Pl.'s Mot. Summ. J. Ex. 3 (seeking attorneys' fees at a $460 hourly rate in the fee invoice generated by Ms. Houck, Ms. Wilhite's counsel); Houck Decl. ¶ 7, Pl.'s Mot. Summ. J. Ex. 5, ECF No. 7-8 (stating that Ms. Houck has practiced special education law since 1997—*i.e.*, for eighteen years at the time Ms. Wilhite filed her motion for summary judgment in 2015). Her invoice, however, includes hours billed after May 31, 2015, which are presumptively governed by the updated 2015–2016 *Laffey* Matrix. *Compare Laffey* Matrix (setting rates for "June 1[, 2014] – May 31[, 2015]"), *with* Pl.'s Mot. Summ. J. Ex. 3, at 9–11 (seeking compensation at a $460 hourly rate, even for entries after May 31, 2015). *See generally USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited July 25, 2016) (setting, for "June 1[, 2015] – May 31[, 2016]," a $504 hourly rate for attorneys with sixteen to twenty years of experience). The Court will use the 2015–2016 rate to calculate attorneys' fees and costs for work performed after May 31, 2015.

Court summarizes the governing legal standards before analyzing the merits of the parties' assertions.

## III.  LEGAL STANDARDS

### A.  Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See id.* at 324. In an action for attorneys' fees following an administrative proceeding under the IDEA, the "party moving for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate." *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014).

### B.  Attorneys' Fees in IDEA Litigation

The IDEA seeks to ensure that disabled children receive a free and appropriate public education tailored to the specific needs of each child. *See* 20 U.S.C. § 1400(d)(1)(A). If a child's parent believes that a school district has not adhered to the IDEA, that parent may file an administrative complaint with the local education agency. *See* 20 U.S.C. § 1415(b)(6). Under the IDEA, a district court may award "reasonable attorneys' fees" to a prevailing party in an IDEA administrative proceeding. 20 U.S.C. § 1415(i)(3)(B)(i). In doing so, the Court follows a two-step inquiry: first, the Court must determine whether the party seeking the fees is the prevailing party; second, the Court must determine whether the requested attorneys' fees are

4

reasonable. *See McAllister*, 21 F. Supp. 3d at 99; *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).

The District does not contest that Ms. Wilhite was the prevailing party. *See* Def.'s Cross-Mot. 1 (challenging only the reasonableness of Ms. Wilhite's requested hourly rate). Therefore, the Court analyzes solely whether Ms. Wilhite's requested attorneys' fees are reasonable.

A reasonable fee is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *see also Jackson,* 696 F. Supp. 2d at 101 (applying *Hensley* in the IDEA context). The plaintiff bears the burden of establishing the reasonableness of any fee requests, and, specifically, whether both the hourly rate and the number of hours spent on any particular task are reasonable. *See Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015); *Jackson*, 696 F. Supp. 2d at 101 (citing *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995)). A plaintiff may do so by submitting evidence of "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates of the relevant community." *McAllister*, 21 F. Supp. 3d at 100 (internal quotation marks omitted) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)). Once the plaintiff has provided that evidence, the Court presumes that the number of hours billed is reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing. *See Covington,* 57 F.3d at 1109–10; *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010). However, if both parties fail to present satisfactory evidence demonstrating that their proposed hourly rates are reasonable, the court may determine a reasonable hourly rate by reference to the *Laffey* Matrix. *See Brown v. District of Columbia*, 80 F. Supp. 3d 90, 96 (D.D.C. 2015).

## IV. ANALYSIS

The District does not challenge the reasonableness of Ms. Wilhite's counsel's hours spent litigating her case. *See* Def.'s Cross-Mot. 1.[3] Accordingly, the Court proceeds to address whether Ms. Wilhite's requested hourly rate is reasonable. *See* Def.'s Cross-Mot. 2–12 (arguing that it is not).

### A. Governing Principles

"Whether an hourly rate is reasonable turns on three sub-elements: (1) 'the attorney's billing practices,' (2) 'the attorney's skill, experience, and reputation' and (3) 'the prevailing market rates in the relevant community.'" *Eley*, 793 F.3d at 100 (brackets omitted) (quoting *Covington*, 57 F.3d at 1107). Because the plaintiff bears the burden of justifying the reasonableness of her attorneys' requested hourly rate, she must "produce satisfactory evidence—*in addition* to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 100, 104 (internal quotation marks omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

---

[3] Although the District does not challenge Ms. Wilhite's counsel's hours directly in the cross-motion for summary judgment, the District claims in its response to Ms. Wilhite's statement of material facts that "many entries on [her] invoice . . . had erroneous and non-reimbursable time entries." Def.'s Resp. Pl.'s Statement Material Facts 2, ECF No. 9-1; *see generally* Def.'s Cross-Mot. The District, however, must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In addition, undeveloped arguments are deemed waived. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)); *see also Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013). The Court accordingly does not address the District's contention that Ms. Wilhite's attorney's invoice contained "erroneous and non-reimbursable time entries." Def.'s Resp. Pl.'s Statement Material Facts 2.

To that end, if an IDEA plaintiff wishes to request rates based on the *Laffey* Matrix, she must provide "evidence that her 'requested rates are in line with those prevailing in the community for *similar services*,' *i.e.*, IDEA litigation." *Id.* at 104 (quoting *Covington*, 57 F.3d at 1109). That evidence may be found in "[1] surveys [that] update [the Matrix]; [2] affidavits reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases; and [3] evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101 (emphasis added) (internal quotation marks omitted) (quoting *Covington*, 57 F.3d at 1109). As the D.C. Circuit has made clear, the district court may not simply conclude that "some version of the *Laffey* matrix is presumptively reasonable." *Eley*, 793 F.3d at 105 (internal quotation mark omitted) (quoting *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 159 (D.D.C. 2013))); *see also Snead v. District of Columbia*, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) ("Laffey should not be the default rate for fees awarded pursuant to [the] IDEA.").

In support of her request for the *Laffey* Matrix rate, Ms. Wilhite provides affidavits from IDEA practitioners, and she cites cases from this district in which attorneys have received *Laffey* Matrix rates. *See* Pl.'s Mem. 5–6 (citing *Merrick v. District of Columbia*, 134 F. Supp. 3d 328 (D.D.C. 2015); *District of Columbia v. Kirksey–Harrington*, 125 F. Supp. 3d 4 (D.D.C. 2015); *Bucher v. District of Columbia*, 777 F. Supp. 2d 69 (D.D.C. 2011);[4] and *Cox v. District of Columbia*, 754 F. Supp. 2d 66 (D.D.C. 2010)); Pl.'s Mot. Summ. J. Ex. 4, ECF No. 7-7 (providing affidavits from eleven IDEA practitioners); Pl.'s Reply 4 (citing *Eley v. District of*

_____

[4] Ms. Wilhite incorrectly cites this case as "*Ward v. District of Columbia*." Pl.'s Mem. 5. Because "Ward Bucher" is the plaintiff's full first name in *Bucher v. District of Columbia*, 777 F. Supp. 2d 69 (D.D.C. 2011), and because *Bucher* otherwise matches the description that Ms. Wilhite provides, the Court presumes that Ms. Wilhite inadvertently mistitled the case that she intended to cite.

*Columbia*, 999 F. Supp. 2d 137 (D.D.C. 2013), *vacated and remanded on other grounds*, 793

F.3d 97 (D.C. Cir. 2015); and *Irving v. D.C. Pub. Schs.*, 815 F. Supp. 2d 119 (D.D.C. 2011)). In

response to the District's motion for summary judgment, Ms. Wilhite also argues that her case

warrants the *Laffey* Matrix rate because of its complexity and that *Laffey* Matrix rates in IDEA

litigation do not undermine education-related public interests. *See* Pl.'s Reply & Opp'n Def.'s

Mot. Summ. J. 6–7, ECF No. 11 [hereinafter Pl.'s Reply]. The Court addresses each of

Ms. Wilhite's four sources of support for her position in turn.

**B. Affidavits**

As noted before, an IDEA plaintiff requesting a particular hourly rate may support her

requested hourly rate by providing "affidavits reciting the precise fees that attorneys with similar

qualifications have *received* from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101

(emphasis added) (quoting *Covington*, 57 F.3d at 1109). Ms. Wilhite provides eleven affidavits

from other IDEA practitioners and her own attorney's declaration. *See* Pl.'s Mot. Summ. J. Ex. 4

(reproducing the affidavits); *id.* Ex. 5, ECF No. 7-8 (reproducing Ms. Houck's declaration).

These affidavits describe the practitioners' experiences and skills, their respective billing rates,

and the difficulty of IDEA litigation. *See generally* Pl.'s Mot. Summ. J. Ex. 4.

Of the eleven practitioners providing affidavits, four practitioners charge LSI *Laffey*

Matrix rates. *See* Moran Decl. ¶ 5, Pl.'s Mot. Summ. J. Ex. 4, at 4-3 to 4-4; Nabors Decl. ¶ 8,

Pl.'s Mot. Summ. J. Ex. 4, at 4-7; Tyrka V.S. ¶ 4, Pl.'s Mot. Summ. J. Ex. 4, at 4-25;[5] Ostrem

---

[5] Douglas Tyrka's affidavit briefly mentions fees Mr. Tyrka received through settlements with DCPS, in which DCPS paid Mr. Tyrka most of what he requested using LSI *Laffey* Matrix rates. *See* Tyrka V.S. ¶¶ 6–7. Although evidence of prevailing community rates may include "evidence of recent fees awarded . . . through settlement," *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109), Mr. Tyrka's settlements have limited persuasive value because a fee cap applied to them. *See* Tyrka V.S. ¶ 7 & n.1 (explaining that, on two occasions in which "DCPS settled large groups of Tyrka & Associates' bills," "federal law prohibited the District of

V.S. ¶ 4, Pl.'s Mot. Summ. J. Ex. 4, at 4-28. One practitioner charges *Laffey* Matrix rates. *See*

Jester Decl. ¶ 12, Pl.'s Mot. Summ. J. Ex. 4, at 4-21. One practitioner charges a rate below the

applicable *Laffey* Matrix rate. *See* Savit Decl. ¶ 11, Pl.'s Mot. Summ. J. Ex. 4, at 4-12. Three

practitioners do not provide the rates that they typically charge their clients, and two of the three

instead note the rates they seek from the relevant opposing school district or from the Court. *See*

Bergeron Decl.¶ 13, Pl.'s Mot. Summ. J. Ex. 4, at 4-24 ("I seek rates congruent with the rates . . .

based on the . . . *Laffey* Matrix."); Hill V.S. ¶ 14, Pl.'s Mot. Summ. J. Ex. 4, at 4-37 ("I have

restricted myself to requesting fees calculated with . . . the '75% USAO [*Laffey* Matrix]'

rate . . . ."); Mendoza V.S., Pl.'s Mot. Summ. J. Ex. 4, at 4-39 to 4-41 (listing no specific rates

charged, requested, or received). Only two practitioners describe rates that they have actually

*received. See* Read Decl. ¶ 6, Pl.'s Mot. Summ. J. Ex. 4, at 4-2 ("[T]he Court in [*Blackman v.

District of Columbia*, 56 F. Supp. 3d 19 (D.D.C. 2014),] awarded me the full *Laffey* rate, except

for 'fees on fees' work."); Hecht V.S. ¶ 16, Pl.'s Mot. Summ. J. Ex. 4, at 4-32 ("I am typically

awarded at least $270.00 per hour for my IDEA work . . . .").

Most of the affidavits that Ms. Wilhite provided thus do not establish the prevailing

community rate for IDEA litigation, because they lack any recitation of the "precise fees" that

they have "received." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109). Instead, most

of the practitioners focus on the fees they *charged*. For that reason, most of the affidavits do not

help the Court determine whether the *Laffey* Matrix rates that Ms. Wilhite requests "are in line

Columbia from paying attorneys' fees for IDEA cases in excess of $4,000 per case"). Given the
fee cap, DCPS may have lacked incentive to insist on a lower rate, which means that Mr. Tyrka's
settlements may not have reflected prevailing rates in the community for IDEA litigation, even at
the time he negotiated those settlements. *See also Rooths v. District of Columbia,* 802 F. Supp.
2d 56, 62 (D.D.C. 2011) (reasoning, in a case in which the plaintiff cited similar settlements, that
"the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not
determined by market forces").

with those prevailing in the community." *Id.* at 104 (quoting *Covington*, 57 F.3d at 1109). The Court therefore focuses its attention on the two affidavits that do describe rates that the attorneys *received* for their IDEA work. *See* Read Decl. ¶ 6; Hecht V.S. ¶ 16.

First, Emily Read's affidavit reports that Ms. Read received the full *Laffey* Matrix rate for most of the work that she performed on *Blackman v. District of Columbia*, 56 F. Supp. 3d 19 (D.D.C. 2014). *See* Read Decl. ¶ 6. But Ms. Read's affidavit has limited usefulness here, because it does not describe rates "prevailing in the community for *similar services.*" *Eley*, 793 F.3d at 104 (emphasis in original) (quoting *Covington*, 57 F.3d at 1109). In *Blackman*, the plaintiff was part of a larger class action against the District of Columbia under the IDEA. *Blackman*, 56 F. Supp. 3d at 21 (noting that the case "was filed under 42 U.S.C. § 1983 to enforce the rights of the plaintiff class members"). Because the case was a class action, the Court determined that the "issues involved [] were complex and time-consuming and [had] broad implications for all charter schools in the District of Columbia." *Id.* at 28. Indeed, the Court had "forced plaintiff's counsel to research many novel questions of law under tight time constraints," *id.* at 29, and twelve attorneys and one paralegal had worked on the case, *see id.* at 24. In brief, *Blackman* was "not a typical IDEA case." *Id.* at 28. Because Ms. Read's services in *Blackman* were in a different context—and thus are not "similar" to Ms. Houck's services in this case—the Court gives Ms. Read's affidavit limited weight as evidence of a reasonable hourly rate in Ms. Wilhite's case.

Second, Alana Hecht's affidavit reports that Ms. Hecht is "typically awarded at least $270.00 per hour for [her] IDEA work." Hecht V.S. ¶ 16. But a $270 hourly rate corresponds to only eighty-three percent of the *Laffey* Matrix rate that would apply to Ms. Hecht. *See USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C.,

https://www.justice.gov/usao-dc/file/796471/download (last visited July 25, 2016) (setting a

$325 hourly rate for attorneys with four to five years of experience); Hecht V.S. ¶ 6 (indicating

that Ms. Hecht has been litigating IDEA cases "since 2010," and that, at the time of her

declaration on August 12, 2015, she had five years of experience). Thus, unfortunately for

Ms. Wilhite's counsel, Ms. Hecht's affidavit does not support Ms. Wilhite's proposed *Laffey*

Matrix rate; instead, Ms. Hecht's affidavit undermines Ms. Wilhite's proposal, because the

affidavit is evidence that prevailing community rates may indeed be less than those that the

*Laffey* Matrix sets.

Overall, Ms. Wilhite's affidavits are not sufficient evidence to justify Ms. Wilhite's

contention that *Laffey* Matrix rates are comparable to rates prevailing in the community for

similar services in IDEA litigation. The Court now turns to the cases that Ms. Wilhite cites in

support of her position.[6]

## C. Cases

An IDEA plaintiff may also support her requested hourly rate with "evidence of recent

fees awarded by the courts . . . to attorneys with comparable qualifications handling similar

---

[6] The Court notes that the declarant-attorneys in Ms. Wilhite's affidavits state that their practices are struggling and that they look for relief in the form of full *Laffey* Matrix rates and LSI *Laffey* Matrix rates. *See, e.g.*, Hecht V.S. ¶ 17 ("If all judges . . . were to award . . . 75% of the United States Attorney's Office version of the 'Laffey matrix,' I would likely be forced to leave my current practice and either work only for paying clients or find entirely different work."). But, to the extent that the attorneys rely on a public interest in granting them larger fee awards, *see, e.g.*, Mendoza V.S. ¶ 12 (explaining that, because judges commonly award IDEA fees at rates equivalent to seventy-five percent of those in the *Laffey* Matrix, Ms. Mendoza believes that "it is impossible to maintain a practice in which a large portion of the work is IDEA work for non-paying clients"), another public interest favors smaller fee awards: public education itself. "[I]nflated fee awards are far from harmless; they produce windfalls to attorneys at the expense of public education." *Price v. District of Columbia*, 792 F.3d 112, 117 (D.C. Cir. 2015) (Brown, J., concurring). Inflated fees can, in this manner, harm "the very children the IDEA seeks to protect." *Id.* at 118.

cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109). To that end, Ms. Wilhite

cites *Merrick*, 134 F. Supp. 3d 328; *Kirksey–Harrington*, 125 F. Supp. 3d 4; *Eley*, 999 F. Supp.

2d 137; *Irving*, 815 F. Supp. 2d 119; *Bucher*, 777 F. Supp. 2d 69; and *Cox*, 754 F. Supp. 2d 66.

*See* Pl.'s Mem. 5–6; Pl.'s Reply 4; *see also id.* at 5–6 (discussing *Merrick*).

Two of the cases that Ms. Wilhite cites provide limited support to Ms. Wilhite's position,

for the same reason as the one applicable to Ms. Read's affidavit discussed above: they do not

document rates "prevailing in the community for *similar services.*" *Eley*, 793 F.3d at 104

(quoting *Covington*, 57 F.3d at 1109); *see supra* Part IV.B (discussing Ms. Read's affidavit). In

*Cox*, the plaintiffs' attorney provided services for four joined plaintiffs, and the Court found that

the plaintiffs' administrative hearings were complicated and "complex" in light of the case's

extensive administrative record. *See* 754 F. Supp. 2d at 68 n.1, 76. In *Kirksey–Harrington*, the

case involved a "unique issue," "somewhat confusing" underlying facts, and "determination of

the student's educational placement, which is a rather complicated legal issue." 125 F. Supp. 3d

at 15–16. Because of the complexity of the issues in *Cox* and *Kirksey–Harrington*, the Court

determined that full *Laffey* Matrix rates were appropriate for the subsequent attorneys' fee

awards. *See Cox*, 754 F. Supp. 2d at 76; *Kirksey–Harrington*, 125 F. Supp. 3d at 15–16.

By contrast, here, Ms. Wilhite has not offered any similar argument for the complexity of

her case—at least, none that would distinguish her case from a typical IDEA matter. *See* Pl.'s

Reply 6 (recounting in just one paragraph that the administrative hearing "consisted of testimony

from experts, teachers, and the director of a private school"; that Ms. Wilhite's counsel needed

"particular knowledge" to effectively examine those witnesses; and that "more than 80 exhibits"

were admitted in the administrative proceedings); *infra* Part IV.D (comparing Ms. Wilhite's case

to other IDEA cases and finding that Ms. Wilhite's case was not exceptionally complex).

Because, unlike *Cox* and *Kirksey–Harrington*, Ms. Wilhite's case is not exceptionally complex, the attorneys in *Cox* and *Kirksey-Harrington* did not provide services that were "similar" to those that Ms. Wilhite's attorney provided. Accordingly, these two cases do not support Ms. Wilhite's argument in favor of full *Laffey* Matrix rates.

The remaining cases that Ms. Wilhite cites—*Irving*, *Bucher*, the district court's *Eley* decision, and *Merrick*—do not support Ms. Wilhite's argument for a different reason: they contravene the D.C. Circuit's directive in its *Eley* decision, because the district court in those four cases did not require the plaintiffs "to produce satisfactory evidence" that they merited the full *Laffey* Matrix rate. *Eley*, 793 F.3d at 104 (quoting *Covington*, 47 F.3d at 1109); *see also id.* (placing the burden of production on the plaintiff).[7]

In *Irving*, the plaintiff submitted only "a sworn declaration from her attorney in support of her requested rates," but the district court concluded that the declaration was sufficient evidence to justify awarding *Laffey* Matrix rates. 815 F. Supp. 2d at 131. In *Eley*, however, the D.C. Circuit specified that an IDEA plaintiff has the burden "to produce satisfactory evidence— *in addition to her attorney's own affidavits*—that her requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Eley*, 793 F.3d at 104 (brackets and internal quotation marks omitted) (emphasis in original) (quoting *Covington*, 57 F.3d at 1109). Under *Eley*, therefore, the *Irving* plaintiff would not have met her burden to support her requested rate with appropriate evidence.

---

[7] Admittedly, three of the four cases discussed in this paragraph pre-date the D.C. Circuit's *Eley* decision, issued in 2015. *See Eley*, 999 F. Supp. 2d 137 (issued November 20, 2013); *Irving*, 815 F. Supp. 2d 119 (issued September 30, 2011); *Bucher*, 777 F. Supp. 2d 69 (issued April 11, 2011).

Similarly, in *Merrick*, the district court awarded the full *Laffey* Matrix rate and relied principally on the plaintiff's appended declarations as evidence of prevailing rates in the community. 134 F. Supp. 3d at 340. The court's reliance on those declarations was, however, misplaced: contrary to the D.C. Circuit's directive in *Eley*, the *Merrick* affidavits were not evidence of "the precise fees that attorneys with similar qualifications [had] *received* from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101 (emphasis added) (quoting *Covington*, 57 F.3d at 1109); *cf. Merrick*, 134 F. Supp. 3d at 340 (noting that, in the affidavits that practitioners submitted in support of the *Merrick* plaintiff's fee petition, the practitioners documented rates that they charged or rates that had at some point "been found to be reasonable") (declining to address whether the practitioners actually received the rates they charged).

*Bucher* has different but similar problems. In *Bucher*, the district court awarded the full *Laffey* Matrix rate in large part because the *Laffey* Matrix "has been so widely accepted," and because the District did not provide sufficient evidence to justify its proposed DCPS guideline rates. 777 F. Supp. 2d at 75. But *Eley* cautions district courts against "concluding that some version of the *Laffey* matrix is presumptively reasonable." *Eley*, 793 F.3d at 105 (internal quotation mark omitted) (quoting *Eley*, 999 F. Supp. 2d at 159). And the Circuit expressly held that a district court errs when it applies a version of the *Laffey* Matrix "because no evidence was produced *disproving*" that matrix's applicability: in doing so, the district court impermissibly removes the plaintiff's burden "to demonstrate that her suggested rate [is] 'in line with those prevailing in the community for similar services.'" *Id.* (emphasis in original) (quoting *Covington*, 57 F.3d at 1109). *Bucher*'s reasoning, thus, does not hold water under the Circuit's directives.

Finally, the district court's *Eley* decision was the very decision that the D.C. Circuit vacated when it explained that the district court had impermissibly relieved an IDEA plaintiff of her burden to produce satisfactory evidence in support of her requested rates. *See* 999 F. Supp. 2d at 159–60 (adopting the plaintiff's proposed rates largely because the defendant did not provide evidence to refute them); *cf. Eley*, 793 F.3d at 105 (concluding that the district court's approach was error). Thus, the *Eley* district court decision, like *Irving*, *Merrick*, and *Bucher*, is not persuasive evidence that supports applying the *Laffey* Matrix rate to Ms. Wilhite's case; all four cases contravene principles that the D.C. Circuit set forth in its *Eley* decision. Therefore, these four cases, like Ms. Wilhite's other cited cases, do not provide the Court with evidence to justify applying the *Laffey* Matrix rate here.

This outcome is unsurprising. In this district, "an overwhelming number" of cases awarding IDEA fees adopt rates equivalent to seventy-five percent of *Laffey* Matrix rates. *Platt v. District of Columbia*, No. 14-1173, 2016 WL 912171, at *11 (D.D.C. Mar. 7, 2016). The Court therefore finds that the prevailing rates in the community for IDEA litigation are those equivalent to seventy-five percent of *Laffey* Matrix rates. *See also McNeil v. District of Columbia*, No. 14-1981, 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015) (reaching the same conclusion); *Reed*, 134 F. Supp. 3d at 131 (collecting cases). This status quo has not changed after the D.C. Circuit issued its opinion in *Eley* on July 10, 2015. *See Eley*, 793 F.3d at 97 (decided July 10, 2015); *McNeil*, 2015 WL 9484460, at *1,*5 (signed Dec. 29, 2015); *Snead*, 139 F. Supp. 3d at 375, 381 (signed Oct. 7, 2015); *Reed*, 134 F. Supp. 3d at 122, 131 (signed Sept. 28, 2015).[8]

---

[8] Ms. Wilhite implies that "cases awarding 75% of . . . *Laffey* [Matrix] rates to IDEA practitioners" are not "evidence" to support a particular prevailing community rate. Pl.'s Reply 2–3. But the D.C. Circuit has favorably viewed case citations when assessing whether they can show that a particular hourly rate is the rate prevailing in the community. *See Eley*, 793 F.3d at 102, 104 & n.4 (comparing the District's forty case citations favorably to the plaintiff's four case

The Court recognizes, however, that "[i]n this court, there has not been a unified approach to the proper rates of attorneys' fees in IDEA cases." *Young v. District of Columbia*, 893 F. Supp. 2d 125, 130 (D.D.C. 2012). As discussed above, many judges adopt rates equivalent to seventy-five percent of *Laffey* Matrix rates.[9] Other courts have awarded full *Laffey*

---

citations, and implying that "fee orders issued in other cases" are one category of "evidence of the prevailing market rate". Furthermore, the Circuit has explicitly explained that parties can rely on "evidence of recent fees awarded by the courts . . . to attorneys with comparable qualifications handling similar cases." *Id.* at 101 (internal quotation mark omitted) (quoting *Covington*, 57 F.3d at 1109).

To be sure, the Circuit has also stated that "[a] blunderbuss array of cases specifically selected to support a low hourly rate does not assist the District Court in determining the prevailing community rate." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1325 n.7 (D.C. Cir. 1982); *see also* Pl.'s Reply 2 (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325 n.7). But given that the District's cited cases do not misrepresent the landscape of IDEA fees cases in this district, the Court does not view the District's cited cases to be a "blunderbuss array." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326 n.7. And the Circuit even qualified its "blunderbuss" statement by immediately following it with the statement that "[c]arefully selected cases organized in a meaningful fashion . . . would be extremely useful." *Id.*

The Court accordingly considers the District's cited cases as evidence of rates prevailing in the community for IDEA litigation. In the same vein, the Court rejects Ms. Wilhite's contention that "the District proposed an arbitrary reduction to 75% of the *Laffey* [Matrix] rates." *See* Pl.'s Reply 7.

[9] Ms. Wilhite traces the seventy-five percent rate to *Rooths v. District of Columbia*, 802 F. Supp. 2d 56 (D.D.C. 2011), and claims that "[t]he entire *Rooths* line of cases is questionable" because "district court judges have adopted the *Rooths* rationale without independently analyzing it." *See* Pl.'s Reply 4. But upon analyzing *Rooths*, the Court concludes that its rationale wholly aligns with the D.C. Circuit's directives in *Eley*—and thus that *Rooths* and any cases following its lead are appropriate authorities on which the Court may rely in determining the rate prevailing in the community for IDEA litigation.

In *Rooths*, the Court found that "[i]t is unclear from plaintiff's papers how frequently plaintiff's counsel is paid [his requested fees] directly by a client who is never reimbursed for those fees by the District of Columbia." 802 F. Supp. 2d at 61. The Court accordingly noted that "[t]he evidence produced by the plaintiff . . . is of dubious relevance" to her attempt to show that her proposed hourly rates "reflect those prevailing in the community." *Id.* at 62; *see Eley*, 793 F.3d at 101 (indicating that affidavits for this purpose should recite "the precise fees that attorneys . . . have *received* from fee-paying clients" (emphasis added) (quoting *Covington*, 57 F.3d at 1109)). Thus, in *Rooths*, because "neither party . . . presented satisfactory evidence to demonstrate that their preferred hourly rates [were] reasonable," and because, "[l]ike most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little

Matrix rates. *See Young*, 893 F. Supp. 2d at 131 (citing *Irving*, 815 F. Supp. 2d 119; *Bucher*, 777 F. Supp. 2d 69; *Cox*, 754 F. Supp. 2d 66; and *Jackson*, 696 F. Supp. at 102). But despite the split in district court authority, most of this Court's cases still favor rates equivalent to seventy-five percent of *Laffey* Matrix rates. *Compare Reed*, 134 F. Supp. 3d at 131 (collecting cases that awarded the seventy-five percent rates, and noting that "scores" of this Court's decision have awarded those rates), *with, e.g.*, *Jackson*, 696 F. Supp. 2d at 102–03 (collecting cases supporting higher rates for IDEA cases, but including only two cases from this Court). The few cases favoring higher rates, considered in light of the many other decisions in this district favoring the seventy-five percent rates, do not establish that *Laffey* Matrix rates are those "prevailing in the community" for IDEA cases similar to Ms. Wilhite's. *See* 20 U.S.C. § 1415(i)(3)(C) ("Fees awarded . . . shall be based on rates prevailing in the community in which the action . . . arose for the kind and quality of services furnished."). Accordingly, the Court determines that a rate equivalent to seventy-five percent of the Laffey Matrix rate is the rate "prevailing in the community" that should apply to Ms. Wilhite's case.

---

evidence, and no novel or complicated questions of law," the Court exercised its discretion and settled on hourly rates equal to three-quarters of *Laffey* Matrix rates. *See Rooths*, 802 F. Supp. 2d at 62–63.

Because the rationale in *Rooths* is in line with the D.C. Circuit's directive that a plaintiff may establish the prevailing community rate with affidavits "reciting the precise fees that attorneys . . . have *received* from fee-paying clients," the Court finds *Rooths*'s reasoning supportable. *See Eley*, 793 F.3d at 101 (emphasis added) (quoting *Covington*, 57 F.3d at 1109). Likewise, *Rooths* correctly proceeded under the principle that, if neither party produces satisfactory evidence, then the Court has the discretion to determine the appropriate rate. *See Brown*, 80 F. Supp. 3d at 96. The Court accordingly declines Ms. Wilhite's invitation to ignore *Rooths* and cases like it. *See* Pl.'s Reply 4.

Ironically, although Ms. Wilhite's attorney indicates that she has specialized in education law since 1997, *see* Houck Decl. ¶ 7, a quick review of PACER indicates that she has been involved in more cases before this Court, not fewer, since the *Rooths* seventy-five percent *Laffey* Matrix rate began being applied in 2011.

### D. Complexity

As the Court has previously noted in another case, "in unusual cases, an IDEA plaintiff might be able to 'establish the applicability of [the] *Laffey* [matrix] by proffering evidence that *their* IDEA proceeding was unusually complex.'" *McNeil v. District of Columbia*, No. 14-1981, 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015) (alterations in original) (quoting *Snead*, 139 F. Supp. 3d at 380). But Ms. Wilhite fails to show that her underlying administrative proceeding was sufficiently complex to warrant a *Laffey* Matrix rate. To support the idea that it was, Ms. Wilhite states that "[t]he administrative hearing consisted of testimony from experts, teachers, and the director of a private school"; that "[e]ffective examinations of these witnesses required particular knowledge about DCPS program offerings, private school offerings, [and] disability classifications"; and that "[t]here were more than 80 exhibits admitted in this case." Pl.'s Reply 6.

But, as the District notes, Ms. Wilhite merely lists attributes that are common to many IDEA cases. *See* Def.'s Reply Supp. Cross-Mot. Summ. J. 5, ECF No. 13 (arguing that Ms. Wilhite's administrative proceedings were not "more complicated than the claims generally made by parents," and contending that Ms. Wilhite listed "the general adversities" that all special education attorneys must confront). Indeed, Ms. Wilhite has listed attributes that also apply in other cases in which this Court has awarded fees using rates equivalent to seventy-five percent of *Laffey* Matrix rates. *See, e.g.*, *Platt v. District of Columbia*, No. 14-1173, 2016 WL 912171, at *3, *9–11 (D.D.C. March 7, 2016) (awarding fees at a rate equivalent to seventy-five percent of the *Laffey* Matrix rate in a case that involved 106 exhibits and ten witnesses, including "two experts in the areas of psychology and speech-language evaluation," "a case manager / special education teacher," and "a special education coordinator"); *Wright v. District of Columbia*,

18

No. 11-0384, 2012 WL 79015, at *3–4 (D.D.C. Jan. 11, 2012) (same, in a case that involved

thirty-eight exhibits and sixteen potential witnesses); *McClam v. District of Columbia*, 808 F.

Supp. 2d 184, 190 (D.D.C. 2011) (holding that "*Laffey* high-end rates" were inappropriate in a

case that involved twenty-three exhibits and twenty witnesses). For that reason, the Court does

not find Ms. Wilhite's case "unusually complex" enough to justify awarding full *Laffey* Matrix

rates. *See McNeil*, 2015 WL 9484460, at *6 (quoting *Snead*, 139 F. Supp. 3d at 380).[10]

### E. Public Interests

Without requiring the Court to weigh any public interests that an IDEA fee award might

affect, the IDEA directs the Court to award fees "based on rates prevailing in the community in

which the action or proceeding arose for the kind and quality of services furnished." *Price*, 792

F.3d at 115 (quoting 20 U.S.C. § 1415(i)(3)(C)). The parties nonetheless dedicate portions of

their briefs to public interest arguments: The District contends that "[l]itigation costs under [the]

IDEA are often prohibitive for school districts." Def.'s Cross-Mot. 7. Ms. Wilhite responds by

arguing (1) that IDEA attorneys' fees and funding for special education come from separate

---

[10] Ms. Wilhite argues that the District cannot claim that IDEA cases are "routine, non-complex, and simple," given "the District's abject failure to follow the law in the first place." Pl.'s Reply 6. Ms. Wilhite further states that, "[i]f adherence to the IDEA were so simple, DCPS would not be . . . one of the worst school districts in the country at providing IDEA services for several decades running." *Id.*

As unflattering as the District's IDEA record may be, the complexity of IDEA *compliance* is not the same as the complexity of any subsequent IDEA *litigation*. Ms. Wilhite argues that the District's record shows that IDEA compliance is not "so simple," but her argument does not address the complexity of the IDEA *litigation* following from any noncompliance. IDEA litigation may be relatively simple from a litigation perspective, even if, from an educational perspective, IDEA compliance is relatively complex. In fact, it is likely that the more dismal the District's compliance is, the easier the resulting litigation. Ms. Wilhite's argument about the District's IDEA record does not establish that her case is unusually complex and accordingly does not establish that Ms. Wilhite merits fees awarded at full *Laffey* Matrix rates.

funding streams and (2) that the District could reduce IDEA litigation expenses simply by adhering to the District's obligations under IDEA. *See* Pl.'s Reply 9–10.

As a preliminary matter, the Court observes that the D.C. Circuit has held in non-IDEA cases that "fees should be neither lower, nor calculated differently, when the losing defendant is the government." *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 65 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 49 (D.D.C. 2014)) (citing *Copeland v. Marshall*, 641 F.2d 880, 896 (D.C. Cir. 1980) (en banc)). And, as the Court noted above, the IDEA does not direct the Court to balance public interests when awarding fees. *See* 20 U.S.C. § 1415(i)(3)(C). Thus, whether the Court agrees with either of the parties' contentions is not relevant to the central question here: what "rates [are] prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* Because the parties' public interest arguments neither assist the Court in making that determination nor provide "satisfactory evidence" that Ms. Wilhite's requested hourly rate is "in line with those prevailing in the community for similar services," *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109), the Court considers those arguments no further.[11]

---

[11] The Court notes, however, that Ms. Wilhite's citation to *Leggett v. District of Columbia*, 793 F.3d 59 (D.C. Cir. 2015), is misleading. *See* Pl.'s Reply 10 ("DCPS can avoid cases like this one simply by ensuring that its employees understand and fulfill the school system's obligations under IDEA." (internal quotation marks omitted) (quoting *Leggett*, 793 F.3d at 75). It is true that, if DCPS complied with the IDEA, cases like Ms. Wilhite's would not arise. But the D.C. Circuit's statement in *Leggett* was in the context of a case about the merits of whether DCPS provided a child with a free and appropriate public education—not about what rate is reasonable for an IDEA fee award. *See Leggett*, 793 F.3d at 62 (describing the case). The Circuit's statement therefore does not imply that the courts should contemplate the public fisc in the course of reviewing IDEA fee motions. Likewise, many of Ms. Wilhite's other cited cases about public interests arose in non-fee IDEA contexts. *See Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 9–10 (1993); *Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 845 (6th Cir. 2004); *Bucks Cty. Dep't of Mental Health/Mental Retardation v. Pennsylvania*, 379 F.3d 61,

## F. Total Fees and Costs

Having examined all of the arguments that Ms. Wilhite made in support of awarding her fees using full *Laffey* Matrix rates, the Court determines that Ms. Wilhite has not met her burden to show that her requested rates "are in line with those prevailing in the community for similar services." *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109). On the other hand, as discussed above, ample support exists to show that the rates "prevailing in the community" for IDEA litigation are equivalent to seventy-five percent of *Laffey* Matrix rates. *See supra* Part IV.C. The Court will therefore award Ms. Wilhite her attorneys' fees and costs using a rate equivalent to seventy-five percent of the applicable *Laffey* Matrix rate.

The Court calculates Ms. Wilhite's total attorneys' fees by first adopting the applicable *Laffey* Matrix rates.[12] The Court then reduces the rate by one-quarter to reflect the prevailing rate in the community for IDEA litigation.[13] The Court then multiplies the hourly rates by Ms. Wilhite's attorney's compensable hours to determine her total fee award.[14] On the basis of these calculations, the Court will award Ms. Wilhite $45,167.40 in attorneys' fees.

---

62–63 (3d Cir. 2004); *Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 759 (6th Cir. 2001); *Gadsby ex rel. Gadsby ex rel. Grasmick*, 109 F.3d 940, 942 (4th Cir. 1997); *N.G. v. District of Columbia*, 556 F. Supp. 2d 11, 15 (D.D.C. 2008); *Bd. of Educ. v. Schutz*, 137 F. Supp. 2d 83, 85 (N.D.N.Y. 2001); Pl.'s Reply 9–10 (citing these cases).

[12] Ms. Houck, Ms. Wilhite's attorney, has practiced special education law since 1997. Houck Decl. ¶ 7. Ms. Houck accordingly had eighteen years of experience at the time Ms. Wilhite filed her motion for summary judgment in 2015. *See* Pl.'s Mot. Summ. J. (filed October 9, 2015). Under the 2014–2015 *Laffey* Matrix, Ms. Houck's applicable hourly rate was $460. *See Laffey* Matrix. Under the 2015–2016 *Laffey* Matrix, Ms. Houck's applicable hourly rate was $504. *See supra* note 2 (citing *USAO Attorney's Fees Matrix – 2015 – 2016*, Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited July 25, 2016))).

[13] Ms. Houck's reduced 2014–2015 hourly rate is $345. Her reduced 2015–2016 hourly rate is $378.

[14] Ms. Houck reports 129.6 hours of compensable work on Ms. Wilhite's case, which the District does not challenge. *See* Pl.'s Mot. Summ. J. Ex. 3, at 1–10; Def.'s Cross-Mot. 1–12.

Because "[i]n this circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate," *Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 15 (D.D.C. 2005), the Court will reduce the hourly rate for Ms. Wilhite's travel time by twenty-five percent as well. *See* Pl.'s Mot. Summ. J. Ex. 3, at 11 (seeking a $230 hourly rate, which is one-half the applicable $460 *Laffey* Matrix rate, for five hours of travel).[15] Because the District does not challenge Ms. Wilhite's request for compensation related to her travel time, *see* Pl.'s Mot. Summ. J. Ex. 3, at 11; Def.'s Cross-Mot. 1–12, the Court will award Ms. Wilhite $862.50 in travel-related costs. The Court will also award Ms. Wilhite her undisputed printing and parking costs, in the amount of $354. *See* Pl.'s Mot. Summ. J. 11; Def.'s Cross-Mot. 1–12; *see also Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 28 n.7 (D.D.C. 2004) ("An award of costs for copying, faxing, and postage . . . [is] customarily included in fees awards."). Based on these calculations, the Court will award Ms. Wilhite $46,383.90 in total attorneys' fees and costs.

---

Ms. Houck performed 115.8 of the hours during the period governed by the 2014–2015 *Laffey* Matrix. *See Laffey* Matrix (setting 2014–2015 *Laffey* Matrix rates for the period between June 1, 2014 and May 31, 2015); Pl.'s Mot. Summ. J. Ex. 3, at 1–9 (listing work performed between January 15, 2015 and May 26, 2015). She performed 27.6 of the hours during the period governed by the 2015–2016 *Laffey* Matrix. *See USAO Attorney's Fees Matrix – 2015 – 2016*, *supra* note 12 (setting 2015–2016 *Laffey* Matrix rates for the period between June 1, 2015 and May 31, 2016); Pl.'s Mot. Summ. J. Ex. 3, at 9–10 (listing work performed between June 6, 2015 and June 25, 2015).

The Court's calculated fee amounts are as follows: $39,951.00 for 2014–2015 (115.8 hours at $345.00 per hour) and $5216.40 for 2015–2016 (13.8 hours at $378 per hour). Adding these amounts yields $45,167.40.

[15] All of Ms. Houck's travel time occurred between June 1, 2014 and May 31, 2015. *See* Pl.'s Mot. Summ. J. Ex. 3, at 11. The Court therefore applies the 2014–2015 *Laffey* Matrix rate ($460), reduces it by fifty percent to reflect the appropriate hourly rate for travel time ($230), and reduces it once more by twenty-five percent to yield $172.50. Multiplying 5 hours by $172.50 yields $862.50.

## V.  CONCLUSION

For the foregoing reasons, Ms. Wilhite's Motion for Summary Judgment (ECF No. 7)

shall be **GRANTED IN PART** and **DENIED IN PART**, and the District's Cross-Motion for

Summary Judgment (ECF No. 9) shall be **GRANTED**.[16] An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 25, 2016                                                    RUDOLPH CONTRERAS
                                                                         United States District Judge

---

[16] If Ms. Wilhite chooses to file a timely request for an additional award of fees, as compensation for the time and effort that her attorney reasonably expended in seeking her award of attorneys' fees, the Court will entertain such a motion at that time. *See* Pl.'s Mem. 7–8 ("Ms. Wilhite respectfully requests that this Court . . . allow the submission of a supplemental petition for fees on fees."); *see also Kaseman*, 444 F.3d at 640 (noting that parties who prevail at the administrative level can also recover "fees on fees" for time devoted to obtaining attorneys' fees). But for purposes of facilitating informal resolution of such amounts, the Court notes that it has reimbursed those amounts in prior cases at rates equivalent to fifty percent of applicable *Laffey* Matrix rates. *See McAllister v. District of Columbia*, No. 11-2173, 2016 WL 614363, at *4 (D.D.C. Feb. 16, 2016); *Means v. District of Columbia*, 999 F. Supp. 2d 128, 136 (D.D.C. 2013).